No. 83-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

CITY OF BILLINGS,

        Petitioner and Appellant,

  -vs-

STATE OF MONTANA HUMAN RIGHTS
COMMISSION, and EMERSON GREEN,

        Respondents and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Peterson, Schofield & Leckie, Billings, Montana

    For Respondents:

        Anne L. MacIntyre, Dept. of Labor & Industry,
(Human Rights), Helena, Montana
Boschert & Boschert, (Green), Billings, Montana

Submitted on Briefs: November 17, 1983

Decided: April 19, 1984

Filed: APR 19 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The City of Billings appeals from an order of the District Court affirming the judgment of the Montana Human Rights Commission in favor of Emerson Green. We affirm the judgment of the District Court.

The issues presented on appeal are:

(1) Did the Montana Human Rights Commission follow proper procedure?

(2) Was the decision of the Commission arbitrary, capricious and clearly erroneous?

(3) Did the District Court apply the proper standard of review?

Emerson Green worked as a custodian at the Billings International Airport from December, 1976 until March 27, 1978. He was 71 years old at the time he was discharged. Green filed an age discrimination complaint with the Human Rights Commission. He alleged that he had been harassed by his supervisor and co-workers and that other employees were late for work without being reprimanded, while he was terminated for being late for work one time. The Human Rights Commission staff investigated Green's complaint. A hearing was held before a hearing examiner appointed by the Commission, pursuant to section 49-2-201(2), MCA.

Uncontested testimony before the hearing examiner established that Emerson Green had worked the night shift from 9:30 p.m. to 6:00 a.m. Green was the only night shift custodian over 30 years of age. Co-workers called him "Grandpa" and "old man." Green's supervisor once stopped a physical assault upon Green by a co-worker during work hours, but the supervisor did not reprimand the co-worker. The City had previously terminated Green's employment, but reinstated

2

him in his custodial position upon investigation of his union grievance.

The record includes a June 9, 1978 letter of City Administrator, R. L. Larsen, which reflects reasons why Green had work problems:

> ". . . According to information, both the management and union presentations, the Airport has had problems with custodial service due to the hours, tedious conditions and relatively poor supervision in the year 1977. In July of 1977, several supervisors were replaced and a great number of complaints began to surface as to the quality of the custodial work. Mr. Green has received the brunt of many of these complaints from not only the customers within the Airport Complex but from co-workers as well . . .

> "From the standpoint of Mr. Green, a very deep seated feeling was felt that his co-workers and supervisors were 'out to get him.' Supervision appeared to be lacking and other factors seemed to come into play involving additional custodial workers.

> "During the entire period of time Mr. Green was employed by the City of Billings Airport, adequate job supervision seemed to be lacking. In addition, the continual conflict between co-workers appeared to be evident due to the age differences of the workers themselves . . . Under the type of work situation with no supervision, and a co-worker attitude problem, it appears that if Mr. Green could be reinstated to work with the City, that it should not be at the Airport Complex in any capacity." (emphasis added)

The City Administrator concluded that Mr. Green should be reinstated without back pay in the next available City job opening.

On July 1, 1978, the City offered Green a custodial position at the Public Utilities Department. Green refused the reinstatement offer because he would lose seniority and back pay if he accepted. Green collected unemployment compensation until the effective date of the reinstatement offer. He went to work for Saga Foods at Eastern Montana College in September, 1978.

The City of Billings presented evidence to the Commission's hearing examiner that Green was discharged for cause, that he was responsible for the poor relationship with co-workers, that he was a hostile employee and that his work performance was poor.

In contradiction to this evidence, Green's current employer testified that Green was pleasant, prompt, efficient, and got along well with college-age co-workers at Eastern Montana College. Green testified that he had been offended by being called "old man" and that his supervisor, as well as his co-workers, had referred to him derogatorily in front of members of the public. Green explained that at times he had been unable to perform all of his assigned tasks at the airport because co-workers forced him to do their work in addition to his own. He testified that co-worker Bob McCleve ordered him about and physically assaulted him twice during work hours. Supervisor Jim Murray stopped the second assault, which gave Green a black eye and broke his glasses. McCleve was in his early 20's at the time and Green was 70 years old. Supervisor Murray reported the incident to Building Supervisor Russell Lehmer. Lehmer testified that he did not take any disciplinary action against McCleve because he was not certain who had started the fight.

The hearing examiner issued a proposal for decision on February 4, 1981. The examiner determined that the City had discriminated against Green because of his age. He proposed that the Commission order the City to pay Green "$3.55 for an 8-hour day, 40-hour week from March 27, 1978 until July 1, 1978," the date on which Green would have been reemployed by the City had he "accepted the reinstatement offer under the grievance procedure."

4

Both parties filed exceptions to the proposed order. New counsel was substituted for Green's trial counsel and filed exceptions to the proposed restriction of back pay to July 1, 1978 without interest. Green's substituted counsel requested oral argument before the Commission on the issue of damages. She asserted that the period of discrimination lasted from the date of the discriminatory act (the unlawful discharge on March 27, 1978) until the date the discrimination is ended (the proposed order of February 4, 1981). She petitioned the Commission for permission to supplement the record on the issue of damages.

The issue of damages was argued orally before the Commission and briefed by both parties. Following this hearing, the Commission ordered the City to (a) reinstate Green in the first available custodial position at the Billings Airport, (b) pay back wages from the date of discharge, March 27, 1978, until February 4, 1981, less interim wages and (c) pay interest at the rate of 10% per annum. The Commission's back pay award was based in part upon evidence submitted at the supplemental hearing on damages.

The City petitioned for judicial review. The District Court affirmed the Commission's final order. From this judgment, the City appeals.

I

Did the Human Rights Commission follow proper procedure in conducting a supplemental evidentiary hearing on the issue of damages before issuing its final order?

The City contends that the Commission exceeded its authority in admitting new evidence on the question of lost wages. The City further asserts that the Commission improperly modified the hearing examiner's findings of fact

5

and proposed order, in violation of section 2-4-621(3), MCA, by improperly admitting additional evidence and substituting the Commission's decision for that of the hearing examiner.

Following the hearing on exceptions to the proposal for decision, the Commission ordered both parties to further brief the issue of damages. Both parties were given opportunity to respond to all the evidence. The supplemental evidence that the City contends was improperly admitted consisted of copies of the City of Billings' Compensation Plans, AFSCME, 1976-1979 and the agreement between Teamsters Local 190 and the City of Billings 1980-1981. The Commission took judicial notice of these documents, which Green supplied to the Commission and the City.

Section 2-15-1706(3), MCA of the Executive Reorganization Act defines the Human Rights Commission as a quasi-judicial board. Section 2-15-102(9), MCA defines the functions of a quasi-judicial board as follows:

> "'Quasi-judicial function means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes but is not limited to the functions of interpreting, applying, and enforcing existing rules and laws; . . . determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; adopting procedural rules; . . . holding hearings; and any other act necessary to the performance of a quasi-judicial function."

The procedure followed by the Commission in this case is authorized by the Administrative Rules of Montana. Section 24.9.245(5), A.R.M. requires the Commission to give any party, who is adversely affected by a hearing examiner's proposal for decision, the opportunity for oral argument. Sections 24.9.245(5), A.R.M. and 2-4-621(1), MCA specify that requests for oral argument shall be filed when exceptions to the proposal for decision are filed. Here, both parties

6

filed exceptions to the proposed decision, and the full Commission heard oral argument on September 29, 1981.

In objecting to the examiner's proposal for decision, Green specifically moved the Commission for oral argument on the issue of back pay and redetermination of the back pay award. Section 24.9.242(3), A.R.M. states in pertinent part:

"If the motion requires consideration of facts not appearing in the record, the movant shall also serve and file copies of all . . . evidence he desires to present in support of the motion."

At the hearing on the exceptions, particularly the issue of damages, Green's substituted counsel discovered that the City's contract and pay plans had not previously been submitted for the Commission's consideration. The Commission took the matter of damages under advisement and requested supplemental briefs. Copies of the City's contract and pay plans were attached to Green's supplemental brief. Copies of these documents and Green's computation of lost wages were served upon the City, which filed its supplemental brief two days later.

The Commission took judicial notice of the contract and pay plans. In its order, the Commission explained that:

"These calculations are based on figures submitted in evidence at the hearing, on exceptions submitted by the parties, and on computations and briefs of the parties on the issue of damages submitted at the request of the Human Rights Commission. The briefs were served on opposing counsel in addition to being submitted to the Human Rights Commission and the parties had the opportunity to respond."

No contention of inaccuracy or lack of opportunity to respond is made. The City is arguing for application of a technical rule of evidence.

The Commission has statutory authority to conduct supplemental hearings and accept additional evidence. Nothing in the Montana Code or the Administrative Rules of Montana prohibits the Commission from formulating a final

order based on all the evidence. In fact, section 2-4-621(3), MCA requires the Commission to review the complete record before increasing the recommended penalty in a proposal for decision. Additional indication of legislative intent that the agency's determination be based on a review of all material evidence is found in section 2-4-703, MCA. That section authorizes a court to order additional evidence to be presented to the agency prior to judicial review of the agency's determination. It also authorizes the agency to modify its decision based on the additional material evidence.

The manner in which the Commission may adopt, reject or modify a proposal for decision is set forth in section 2-4-621(3), MCA. That subsection imposes the following restrictions upon the Commission:

> "(3) The agency may adopt the proposal for decision as the agency's final order. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the proposal for decision but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept or reduce the recommended penalty in a proposal for decision but may not increase it without a review of the complete record."

Green's position regarding back pay changed when new counsel was substituted after issuance of the proposal for decision and prior to the parties' filing of exceptions. The matter of interim wages became critical at this point. After filing exceptions and a motion for oral argument on the issue of back pay, Green's substituted counsel successfully argued that computation of lost wages should include wages lost

8

between the date of discharge and issuance of the proposed decision.

The examiner's findings of fact 1-9 were adopted in full; findings 10 and 11 were incorporated into findings made by the Commission after taking notice of additional material evidence and reviewing the complete record.

In effect, the Commission's order modified a conclusion of law, i.e., the proper termination date of a back pay award. The examiner concluded that the termination date was the date of the offer of reinstatement without back pay or seniority. The Commission disagreed with this conclusion and extended the back pay award to the date of determination of discrimination. The Commission may reject or modify an examiner's conclusions of law. Section 2-4-621(3), MCA.

It is true that the Commission failed to state with particularity that findings of fact 10 and 11 were not based on substantial credible evidence, as required by the second sentence in section 2-4-621(3), MCA. However, the Commission's findings 10 and 11 are supported by uncontradicted evidence submitted to the hearing examiner. While there has been a technical failure to comply with the code section, there is no reason to consume additional time by returning this cause for supplemental statements in the final order since the evidence supporting the Commission's findings is uncontradicted.

We hold that the Commission properly conducted a supplemental hearing and reviewed the complete record prior to its increase of the recommended penalty.

## II

Was the decision of the Commission arbitrary, capricious and clearly erroneous?

9

Appellant argues that all of the evidence militates against any suggestion that Green's age played a role in his discharge; that Green failed to prove a prima facie case of discrimination; and that the hearing examiner and Human Rights Commission cannot substitute their judgment for that of management regarding the discharge of an employee.

The hearing examiner found that Emerson Green had established a prima facie case of age discrimination. That finding was sustained by the Commission and the District Court. Martinez v. Yellowstone County Welfare Dept. (Mont. 1981), 626 P.2d 242, 246, 38 St.Rep. 474, 478, sets forth the criteria required to establish a prima facie case of disparate treatment in employment. The evidence established that (1) Green was 71 years of age and therefore a member of a protected class; (2) he was qualified to perform the work and had done so for a number of years; (3) he was discharged despite his qualifications; (4) he was the only custodian on his shift who was more than 30 years of age, and (5) his co-workers referred to him derrogatorily as "Grandpa" and "old man."

Additionally, Mr. Green testified about harassment by his co-workers and failure of supervisory personnel to resolve this problem. This testimony was substantiated by that of Airport Manager, Dale Norby. The June 9, 1978 letter from the City Administrator further substantiates Green's testimony that there was a longstanding conflict between Green and his co-workers, "due to the age differences of the workers, . . . [a] work situation with no supervision, and a co-worker attitude problem." This letter along with the testimony of Green and Norby are evidence of age discrimination against Green.

The examiner's finding that Green's problems while employed by the City were directly related to his co-workers' discriminatory actions was adopted by the Commission. Finding of Fact 7. The standard of judicial review of an agency's finding of fact is whether it is supported by reliable, probative and substantial evidence. Section 2-4-704(2)(e), MCA. "Where factual determinations are warranted by the record and have a reasonable basis in law, they are to be accepted." In the Matter of the Wage Appeal of Montana State Highway Patrol Officers v. Board of Personnel Appeals (Mont. 1984), 41 St.Rep. 154, 158, quoting Standard Chem. Mfg. Co. v. Employment Sec. (1980), 185 Mont. 241, 246, 605 P.2d 610, 613.

We conclude that there was reliable, probative and substantial evidence in the record to support the Commission's determination that Mr. Green's problems while employed by the City were directly related to his co-workers' discriminary actions, that those actions were based solely on Mr. Green's age, and that the employer tolerated discriminatory actions and failed to maintain a work environment free of intimidation.

### III

Did the District Court apply the proper standard of review?

The City contends that the District Court failed to consider the City's allegations that the Human Rights Commission acted in excess of its statutory authority, made its decision upon unlawful procedure or that its decision was arbitrary or characterized by abuse of discretion. The City argues that the District Court erred in limiting its review to a determination of whether the Commission's decision was supported by substantial evidence.

11

Section 2-4-704, MCA specifies the standards for review of administrative decisions:

"Standards of review. (1) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency not shown in the record, proof thereof may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

"(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) affected by other error of law;
(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(g) because findings of fact, upon issues essential to the decision, were not made although requested."

The District Court concluded that its review of the Commission's findings of fact is subject to the substantial evidence standard:

"The Court here is limited to a determination of whether the Commission's finding of discrimination is supported by substantial evidence, and the record reveals that there was substantial evidence to support that decision; thus the decision was not arbitrary, capricious nor an abuse of discretion." Conclusion of Law 3.

This conclusion properly reflects the clear legislative intent that the reviewing court shall not reweigh the evidence. "The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 2-4-704(2), MCA.

12

Regarding appellant's challenges to the Commission's authority to conduct a supplemental hearing and admit additional evidence, the District Court concluded:

> "To reverse or modify the decision of the Human Rights Commission the Court must find that the substantial rights of appellant have been prejudiced by the Commission's actions and the burden is on the appellant to establish such a violation. In this case appellant City of Billings failed to show that its substantial rights had been prejudiced." Conclusion of Law 2.

This conclusion is a proper restatement of the standard of review where an agency's procedure or authority is challenged.

Subsections 2-4-704(2)(b), (c) and (f), MCA speak precisely to the type of alleged errors appellant raised as issues for the District Court's review. As noted in State, Etc. v. Board of Natural Resources (Mont. 1982), 648 P.2d 734, 740-41, 39 St.Rep. 1238, 1243, "the mandates of the Montana review statute cited above . . . contain a clear indication that the legislature intended that a court reverse or modify the lower decision where the agency decision is clearly erroneous, arbitrary, or capricious, resulting in the appellants' rights being substantially prejudiced." The evidence here demonstrates that the Commission's decision was not arbitrary, capricious, characterized by abuse or unwarranted exercise of discretion, or clearly erroneous.

We conclude that the District Court employed the proper standards of review.

We affirm the decision of the District Court.

Justice

13

We concur:

_Frank I. Haswell_
Chief Justice

_Daniel J. Shea_

_John C. Sheehy_

_Wesley Castles_
Justices