No. 88-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

LENORE F. TALIAFERRO,

        Plaintiff and Respondent,

    -vs-

THE STATE OF MONTANA and THE DEPARTMENT
OF SOCIAL and REHABILITATION SERVICES OF
THE STATE OF MONTANA,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James M. Scheier, Agency Legal Services Bureau,
        Helena, Montana

    For Respondent:

        Frederick F. Sherwood, Helena, Montana

---

Submitted on Briefs:  Oct. 6, 1988

Decided: November 29, 1988

Filed:

FILED '88 NOV 29 AM 10 07
CLERK MONTANA SUPREME COURT

_____
           Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


The District Court, First Judicial District, Lewis and Clark County, determined in a jury trial that the State Department of Social and Rehabilitative Services (SRS) discriminated against Lenore Taliaferro when it did not hire her because of her support of certain legislation pending before the 1983 Legislature. The judgment of the District Court awarded damages and attorney's fees. SRS appealed the judgment of the District Court to this Court. The only question presented to us on appeal is whether support for or against legislation before committees in the legislature constitutes "political ideas" or "political beliefs" for which discrimination in employment may not occur under the Governmental Code of Fair Practices and the Montana Human Rights Act. We hold that such support constitutes the exercise of political ideas or political beliefs.

Under the Governmental Code of Fair Practices, § 49-3-201(1), MCA, state and local government officials must evaluate and hire personnel on the basis of merit and qualifications without regard to, among other factors, "political ideas." Under the Human Rights Act, § 49-2-308(3), MCA, it is an unlawful discriminatory practice for the state or any of its political subdivisions to refuse employment to a person because of political beliefs. Government employees are therefore a protected class against discrimination by reason of their political ideas or political beliefs. The Human Rights Act may be enforced before the Human Rights Commission or before the district courts. Title 49, Ch. 2, Part 5, MCA. Likewise, the Governmental Code of Fair Practices may be enforced by the

Human Rights Commission and the district courts. Title 49, Ch. 3, Part 3, MCA.

Lenore Taliaferro was under contract to the Community Services Division of the SRS as a Long Term Care Ombudsman (LTCO) for over two years. An LTCO is a liaison between senior citizens and long-term care facilities and acts as the seniors' ombudsman in case any problems arise regarding their care. Taliaferro's last contract expired on January 21, 1984. Taliaferro went through an application and interviewing procedure before SRS contracted for her services in 1981 and again in 1982. Each time SRS contracted with her on her merit. Each contract between SRS and Taliaferro was for a fixed term and contained no provision guaranteeing continued employment beyond the termination date set forth in the contract. During the two year period Taliaferro competently performed her LTCO duties. There was no evidence that her competence or qualifications were ever deficient.

In the 1983 Legislative Session, House Bill 773 was introduced proposing to establish a permanent LTCO program. The bill provided for the establishment of a Board, to be appointed by the Governor, to oversee the LTCO program, and it further provided that the Board and the program would be attached to the Office of the Governor. Taliaferro believed that SRS had a conflict of interest in administering the LTCO program because SRS was responsible for licensing long-term care facilities, and therefore she believed the program should be attached to another office such as that of the Governor.

During the 1983 Legislative Session, Taliaferro testified in support of the ombudsman legislation. SRS opposed it because it would remove the position from control of SRS to the Office of the Governor. Eventually, the bill did not pass.

After Taliaferro's legislative appearance, Norma Vestre Harris, division head of Community Services of SRS, and Taliaferro's direct supervisor while her services were contracted, informed Taliaferro that SRS would not support the legislation and did not agree with it. In a memorandum of January 19, 1983 Harris informed Taliaferro, "Any activities that you have related to the ombudsman legislation must not involve any SRS staff since it is not part of the executive package and because we are not in agreement with it. . . . I would like to know if you are registered with a group or organization in regard to the legislation and would like to know the name of the organization."

Later in 1983, apparently, the SRS decided to convert the LTCO position from a contracted position to a full-time employment position; and to fill the position through an open recruitment and selection process rather than by simply appointing Taliaferro. At the same time, in a parallel matter, the state converted the position of State Aging Coordinator, then held by Charles Briggs, to one of full time employment. No open recruitment took place for the new position, and Briggs, who formerly was supervised by the Governor, simply continued his position as a full-time employee under the SRS. Briggs distinguished to Taliaferro this separate treatment of the State Aging Coordinator, claiming that his position was different from Taliaferro's in that Briggs was appointed by the Governor, that his contract stipulated that he could become an employee, and that this was approved by legislation.

A number of applicants applied for the LTCO position. The applications were reviewed for minimum qualifications which were: a degree in social work or a related field such as psychology, sociology, or education, and three years experience or a master's degree in social work. Each

applicant was presented with an "application supplement" which two members of the Council on Aging rated according to model answers. Both the questions and the model answers to the application supplement were prepared by Norma Vestre Harris whom Taliaferro had opposed on the ombudsman legislation. Two members of the Council on Aging scored the answers without knowing the names of the respondents. The passing score was set at 15. The record does not say who decided this score or how it was arrived at. Of twenty applicants who submitted the supplement, only seven passed. The scores ranged from 7.5 to 23. Taliaferro achieved the highest score, 23; and two candidates achieved the next highest score of 18. The candidate ultimately chosen for the LTCO position achieved a score of 18.

The seven passing candidates went on to an oral interview consisting of questions and model answers again developed by Norma Harris. The selection committee consisted of Harris, Charles Briggs, and Kelly Moorse, executive director of the Mental Disabilities Board of Visitors. That panel interviewed the seven candidates, scored their responses based on Harris's model answers after discussing each response among themselves and deciding on a "consensus score." The panel did not choose Taliaferro for the job stating that she did not score high enough on the oral interview questions. On those questions the three interviewers scored Taliaferro 37 and the successful candidate 43. The panel based the final hiring decision entirely on the responses to the oral questions.

The District Court jury found that Taliaferro had not been hired because of her support of legislation that SRS opposed. The jury rejected SRS's assertion that its position on House Bill 773 was "neutral."

Our standard of review in employment discrimination cases is that iterated in European Health Spa v. Human Rights Commission (Mont. 1984), 687 P.2d 1029, 1032, 41 St.Rep. 1766, 1769 where we said:

> In Martinez v. Yellowstone County Welfare Department (Mont. 1981), 626 P.2d 242, 38 St.Rep. 474, we adopted the McDonnell test for employment discrimination cases filed under section 49-2-303, MCA, which involve disparate treatment of a protected class because "[t]he provisions of Title 49, Montana Human Rights Act, are closely modeled after Title VII of the Federal Civil Rights Act of 1964 . . ."

In the same case, we set forth a test for such cases following McDonnell Douglas Corporation v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, and we quoted directly from Texas Department of Community Affairs v. Burdine (1981), 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not true reasons, but were a pretext for discrimination. (Citations omitted.)

Under McDonnell, as adopted by us, a plaintiff establishes a prima facie case of employment discrimination if the plaintiff's evidence shows (1) the employer received an application or equivalent from a qualified protected-class person; (2) a job vacancy or employment opportunity existed at the time of the application; and (3) the person was not selected. Martinez, supra.

In United States Postal Service Board of Governors v. Aikens (1983), 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 where the plaintiff claimed employment discrimination because of his color, the Supreme Court held that by establishing a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him, and to rebut the presumption, the defendant must clearly set forth through admissible evidence the reasons for the plaintiff's rejection. If the defendant fails to persuade the Court to dismiss for lack of a prima facie case, and responds to plaintiff's proof by offering evidence of the reasons for the plaintiff's rejection, the presumption drops from the case and the fact finder must then decide the ultimate factual issue of whether the defendant intentionally discriminated against the plaintiff. 460 U.S. at 711. The plaintiff, however, is not required to present direct evidence of the defendant's discriminatory intent. Nonetheless, the ultimate burden of persuading the trier of fact is on the plaintiff at all times. The McDonnell division of intermediate burdens serves to bring the litigants and the Court expeditiously and favorably to the ultimate question. Burdine, supra, 450 U.S. at 253.

The decision of the jury in this case means that it rejected the reasons given by SRS for not employing Taliaferro as pretextual and that it found that SRS refused to hire Taliaferro because of her appearance before the legislature. SRS therefore bases its attack on the judgment on appeal principally on the ground that an effort to persuade the legislature one way or the other with respect to pending legislation is not an expression of either "political beliefs" or "political ideas," and therefore the anti-discrimination statutes do not apply.

Since the ultimate factual issue has already been determined by the jury, the issue on appeal is one of statutory interpretation, and for us a case of first impression. SRS asserts that Taliaferro's support and backing of the 1983 legislation must be associated with "party politics" before either § 49-2-308 or § 49-3-201, MCA, will apply to protect her; that neither the term "political beliefs," nor "political ideas" is defined in the code; and that the District Court construed these terms too broadly and beyond basic rules of statutory construction. On that basis SRS contends that it was entitled to a summary judgment in the District Court.

We agree with the United States Supreme Court that a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment. Pickering v. Board of Education (1968), 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. Here the employee's right of petition may also be involved. Pickering also recognized that the state's interest in regulating the speech of its employees "differs significantly from those that it possesses in connection with speech of the citizenry in general." A balance must be struck between the interest of the employee as a citizen in commenting upon matters of public concern, and the interest of the state as an employer in promoting the efficiency of public service through its employees.

In Connick v. Myers (1983), 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708, the Supreme Court held that the state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression. There it was held that when a public employee speaks out not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, the courts will not

- 8 -

review the wisdom of a personnel decision taken by a public agency. 461 U.S. at 138-139. Conversely, it seems proper to hold that if the public employee does speak on a matter of public concern as a citizen, the public employee is exercising a cherished First Amendment right.

The appellants point to an earlier decision by the Human Rights Commission in 1980, holding that a state employee who was dissatisfied with the performance of his superiors in their operations, and who met with legislators challenging the competence of one superior, was not expressing political ideas or beliefs. Obviously, such an employee was speaking about matters of personal interest, and under Connick v. Meyers, supra, the decision of the Commission was correct. That decision is not precedent for this case.

Here, Taliaferro was not employed at the time that she supported the legislation proposed concerning the LTCO. Her stated concern over the proposed legislation was that a possible conflict of interest existed where the same agency that licensed health care facilities would also supervise the employee concerned with ombudsman duties on behalf of seniors. The effect of the jury verdict is that she was discriminated against because she took that position before the legislature, expressing her rights as a citizen. The First Amendment protects political association with political parties, Buckley v. Valeo (1976), 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659; Elrod v. Burns (1976), 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, but also protects political expression. ". . . Debate on public issues should be uninhibited, robust and wide open," New York Times Co. v. Sullivan (1964), 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed. 686, 701.

Political association, expression and debate, and competition in political ideas and governmental policies are the bulwark of a democratic government. We therefore agree

with the District Court that the support by Taliaferro of proposed legislation before the Legislature was a matter of public concern as to how the government should be conducted, and thus was her expression of her political ideas or political beliefs. The refusal of SRS to hire her based on her political ideas and political beliefs constituted discrimination under our statutes. The judgment of the District Court is affirmed. Costs and attorney's fees to respondent, to be determined by the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices