No. 94-572

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

NAFISSEH HEIAT,

        Plaintiff and Appellant,

   v.

EASTERN MONTANA COLLEGE AND MONTANA
COMMISSIONER OF HIGHER EDUCATION,

        Defendant and Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               Rosemary C. Boschert; Boschert Law Firm,
               Billings, Montana

        For Respondent:

               LeRoy H. Schramm, Montana University System
               Helena, Montana

FILED

MAR 04 1996

Filed:

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  November 9, 1995

Decided:  March 4, 1996

_____
             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Nafisseh Heiat appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, granting Eastern Montana College and the Montana Commissioner of Higher Education (EMC) summary judgment, concluding that EMC was not liable for sexual discrimination in employment. We reverse.

The following issue is raised on appeal:

Did the District Court err in granting EMC's motion for summary judgment?

Plaintiff, Dr. Nafisseh Heiat Ph.D. (Nafisseh), and her husband Dr. Abbas Heiat Ph.D. (Abbas) are employed as associate professors in the Department of Accounting and Information Systems at EMC. Both Nafisseh and Abbas possess Ph.D. degrees from Portland State University. The District Court determined that they, as faculty members at EMC, perform substantially the same work. Abbas was hired by EMC in 1987 as an assistant professor in the information systems program. At the time Abbas was hired, EMC had recently lost its only faculty member in the information systems program who held a Ph.D. EMC advertised for the position listing a Ph.D. as a qualification. EMC offered Abbas the position.

Based on Abbas' "terminal" doctoral degree and experience, his starting salary under the collective bargaining agreement then in effect would have been $20,491. However, the collective bargaining agreement authorized the EMC administration to offer higher salaries to prospective faculty members in extraordinary

2

recruitment situations. Fearing that Abbas would not accept the position for $20,491, EMC offered him in excess of $30,000. Ultimately, after additional negotiation, Abbas accepted the position at a starting salary of $40,000.

In 1988, EMC advertised for another faculty opening in the information systems program. The posting listed a Ph.D. or equivalent as a qualification. Nafisseh received her Ph.D. in 1987, and applied for this position with EMC. She was offered the position with a staring salary of $27,190. Although she requested an additional adjustment to the starting salary, her request was denied and she accepted the position for the offered salary. Both Nafisseh and Abbas have received periodic salary increases, as mandated by the collective bargaining agreement and, during the 1992-93 academic year, Nafisseh earned $39,049 while Abbas earned $54,575. This disparity is due entirely to the difference in their starting salaries.

In April of 1991, Nafisseh filed a complaint with the Montana Human Rights Commission alleging that she had been discriminated against based on her sex and that she had not been given equal pay for equal work. The Montana Human Rights Commission issued a right to sue letter. In her District Court complaint, Nafisseh alleged violations of the Montana Human Rights Act, the Government Code of Fair Practices, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, and the Equal Pay Act. On June 24, 1994, the District Court granted EMC's motion for summary judgment. Nafisseh appeals from this order.

3

Our standard in reviewing a district court's grant of a motion for summary judgment is *de novo*. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. That is, we review an order of summary judgment using the same criteria as the district court; we are guided by Rule 56, M.R.Civ.P. Chilberg v. Rose (Mont. 1995), 903 P.2d 1377, 1378, 52 St.Rep. 1038, 1039 (citing <u>Minnie</u>, 849 P.2d at 214). Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. <u>Minnie,</u> 849 P.2d at 214. Summary judgment is an extreme remedy and should never be substituted for a trial if a material fact controversy exists. Howard v. Conlin Furniture No. 2, Inc. (1995), 272 Mont. 433, 436, 901 P.2d 116, 118-19 (citing Hagen v. Dow Chem. Co. (1993), 261 Mont. 487, 491, 863 P.2d 413, 416).

A party seeking summary judgment has the burden of establishing a complete absence of any genuine factual issues. <u>Howard,</u> 901 P.2d at 118. In light of the pleadings and the evidence before the district court, there must be no material issue of fact remaining which would entitle a non-moving party to recover. <u>Howard,</u> 901 P.2d at 118. Once the moving party has met its burden, the party opposing the summary judgment motion must present material and substantial evidence, rather than conclusory or speculative statements, to raise a genuine issue of material fact. <u>Howard,</u> 901 P.2d at 119. In addition, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party who opposed summary judgment. <u>Howard,</u>

4

901 P.2d at 119 (citing Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511).

EMC contends that it was willing to pay Abbas a higher salary than that contemplated in the collective bargaining agreement because EMC had a pressing need to have a faculty member with a Ph.D. in the information systems program. EMC asserts that "[o]nce the discipline was 'anchored' with a Ph.D. the need for a subsequent Ph.D. was lessened and, given the tight budget the College has labored with for several years, the College felt no need to pay a premium for a second Ph.D. in the same discipline."

Abbas and Nafisseh assert that the rationale of "anchoring" the department was not mentioned to either of them as a factor in setting salaries when they applied for and accepted positions on the faculty at EMC. Further, in an affidavit, Abbas stated that even after he was hired by EMC, he was not told that he occupied an "anchor position" nor was he assigned extra duties or responsibilities. Nafisseh stated that at the time she was hired she was told that she could not be paid a high salary because of the tight budget at EMC.

Dr. Ronald Sexton, vice-president for academic affairs at EMC, asserted that the term "anchor position" was essentially administrative jargon and, as a result, it is quite possible that neither Abbas nor Nafisseh had heard the term. Further, Sexton contended that because EMC already had Abbas as a Ph.D. on its information systems program faculty, EMC was not willing to pay a premium to hire another Ph.D. and that is the reason that Nafisseh

5

was offered a lower starting salary.

According to the United States Supreme Court's burden shifting analysis employed in discrimination cases, once the plaintiff has, by a preponderance of the evidence, proved a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Texas Dep't of Community Affairs v. Burdine (1981), 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 214-15 (citing McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668). Should the defendant carry this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, *450* U.S. at 253. Recently, the Supreme Court refined this stage, stating that "a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks (1993), ___ U.S. ___, *113* S.Ct. *2742, 2752,* 125 L.Ed.2d 407, 422.

At all times, the plaintiff retains the burden of persuasion and, after the defendant has articulated a legitimate, nondiscriminatory reason, the plaintiff must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. Burdine, *450* U.S. at 256. At this point, the burden merges with the ultimate burden of persuading the court that the plaintiff has been a victim of intentional

discrimination. St. Mary's Honor Ctr., 113 S.Ct. at 2752; Burdine, 450 U.S. at 256. The plaintiff succeeds either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

On a motion for summary judgment in discrimination cases, the McDonnell Douglas order of proof and shifting of burdens at trial must be viewed in light of the traditional test for granting a motion for summary judgment. Brown v. Parker-Hannifin Corp. (10th Cir. 1984), 746 F.2d 1407, 1411. That test is whether the moving party has demonstrated that there are no genuine **issues** of **material** fact and that the **moving** party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Howard, 901 P.2d at 118-19. As the Seventh Circuit stated, "[a]s a general rule, questions of motive and intent are inappropriate for summary judgment." Box v. A & P Tea Co. (7th Cir. 1985), 772 F.2d 1372, 1378, *cert. denied,* 478 U.S. 1010 (1986) (citing Cedillo v. International Ass'n of Bridge & Structural Iron Workers (7th Cir. 1979), 603 F.2d 7, 11). The Box court stated:

> Consequently, a defendant in a discrimination case is not entitled to summary judgment if the plaintiff submits evidence from which a court can reasonably infer that the articulated **legitimate** reason is, **in fact,** a pretext for discrimination.

Box, 772 F.2d at 1378 (citing Gifford v. Atchison, Topeka and Santa Fe Ry. (9th Cir. 1982), 685 F.2d 1149, 1156).

The District Court determined that although Nafisseh had

7

established a prima facie case of sex discrimination, EMC had established a legitimate nondiscriminatory reason for the salary disparity between Abbas and Nafisseh. The District court determined that the differences in the salaries were based on factors other than sex. See County of Washington v. Gunther (1981), 452 U.S. 161, 170-71, 101 S.Ct. 2242, 2248-49, 68 L.Ed.2d 751, 760-61. However, in making this determination, the District Court adjudicated the disputed issue of material fact as to the reason for the differences in the salaries. As the Seventh Circuit found in Box, this factual determination of motive or intent is precisely the reason that summary judgment is generally inappropriate in discrimination cases. Box, 772 F.2d at 1378; see also Sorba v. Pennsylvania Drilling Co. (3d Cir. 1987), 821 F.2d 200, 205, *cert. denied,* 484 U.S. 1019. Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment. Brown 746 F.2d at 1411.

We note that Nafisseh's burden to overcome a motion for summary judgment is different than her burden at trial. In Kenyon v. Stillwater County (1992), 254 Mont. 142, 148, 835 P.2d 742, 745-46, we stated that, in order to survive a motion for summary judgment, the plaintiff has the initial burden to "adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity ."

We went on to hold that:

> If that burden is met, the employer must rebut the
> inference of discrimination with evidence of legitimate
> nondiscriminatory reasons the plaintiff was not hired or
> was terminated; upon such a showing, the burden shifts

8

> back to the employee to demonstrate with specific facts
> that the employer's explanation is a pretext.

Kenvon, 835 P.2d at 746 (citing Foster v. Arcata Associates, Inc. (9th Cir. 1985), 772 F.2d 1453, 1459, *cert. denied, 475* U.S. 1048 (1986), *overruled on other grounds by,* Kennedy v. Allied Mut. Ins. Co. (9th Cir. 1991), 952 F.2d 262). We now determine that this process places a plaintiff, the nonmoving party in this summary judgment context, in the peculiar position of having to prove her case to survive the defendant's motion. The order of proof and shifting of burdens at trial must be viewed in light of the traditional test for granting a motion for summary judgment. Thus, to survive a motion for summary judgment, a plaintiff must only produce evidence sufficient to support a reasonable inference of the existence of the fact at issue. Under the Kenvon test, the non-moving party is saddled with two burdens, first, to "adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity" and, if the employer rebuts the inference of discrimination with evidence of legitimate nondiscriminatory reasons, to "demonstrate with specific facts that the employer's explanation is a pretext." Kenvon, *835* P.2d at 746.

The three-step McDonnell Douglas analysis, as adopted in the summary judgment context by this Court in Kenvon, conflicts with the two-step analysis traditionally employed in deciding motions for summary judgment. Under the traditional summary judgment analysis the party opposing summary judgment has only one burden, namely, to demonstrate that genuine issues of material fact exist. To do so, the party opposing summary judgment must present material

and substantial evidence, rather than mere conclusory and speculative statements, to raise a genuine issue of material fact. Howard, 901 P.2d at 119. In Kenyon, we made the mistake of following the lead of many state and federal courts throughout the country and superimposed the three-step McDonnell Douglas trial analysis into the summary judgment context without specifically noting that the plaintiff's burden in defending against a motion for summary judgment differs from the plaintiff's burden at trial. At trial, the plaintiff has the burden of proof so the McDonnell Douglas construct of placing the initial burden on the plaintiff is logical. However, when, as here, the defendant makes a motion for summary judgment, that construct does not work. In summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

We now determine that it is error to require a plaintiff in a discrimination case to satisfy the burdens set forth in Kenyon to survive a motion for summary judgment. Accordingly, we overrule that portion of Kenyon v. Stillwater County which requires a plaintiff to initially "adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity" and, in rebuttal, to "demonstrate with specific facts that the employer's explanation is a pretext." Kenyon, 835 P.2d at 746.

Instead, we now adopt an analysis consistent with the Burdine test, yet more compatible with the traditional analysis used in the

10

summary judgment context. The plaintiff must allege a prima facie case of discrimination in her complaint. In this context, the plaintiff alleges a prima facie case by asserting that plaintiff is a member of a protected class, and that a male colleague with the same credentials, who performs substantially the same work, receives a higher salary. The employer seeking summary judgment must then come forward with a legitimate nondiscriminatory reason for the disparity. If the employer comes forward with a legitimate nondiscriminatory reason, the plaintiff must then, in addition to having alleged a prima facie case in the complaint, produce evidence that establishes her prima facie case as well as evidence which *raises an* inference that the employer's proffered *reason is* pretextual.

Of course, this does not mean that a plaintiff in a discrimination action always survives summary judgment when the plaintiff calls the employer's proffered explanation into question. Rather than having to demonstrate with specific facts that the employer's explanation "is a pretext," she need only introduce evidence which raises an inference that the employer's proffered reason is pretextual. To create a genuine issue of material fact as to pretext, the plaintiff must not only introduce evidence from which a reasonable person could infer that she is qualified, she must also introduce evidence that casts doubt on the defendant's contention that there was a legitimate business justification for defendant's action. Chauhan v. M. Alfieri Co. (3d Cir. 1990), 897 F.2d 123, 127 (citing Healey v. New York Life Ins. Co. (3d Cir.

11

1988), *860* F.2d *1209, 1220, cert. denied, 490* U.S. 1098 (1989)).

The <u>Chauhan</u> court determined that the plaintiff had pointed to evidence necessary to pass this test, stating that "the inconsistencies in [defendant's] explanation, as pointed out by [plaintiff], present precisely the kind of 'inconsistencies and implausibilities in [defendant's] proffered reasons' that *could* support an inference of discrimination." <u>Chauhan,</u> 897 F.2d at 128 (citations omitted).

Justice Nelson's specially concurring opinion contends that the <u>Kenyon</u> test requires that a plaintiff opposing summary judgment do nothing more than establish a genuine issue of material fact. However, as this case exemplifies, in discrimination cases, the district courts are requiring that a plaintiff do more than merely raise an issue of material fact. In the present case, the District Court held that EMC established a legitimate nondiscriminatory reason for the salary disparity and that:

> Dr. Nafisseh Heiat failed to establish the legitimate, nondiscriminatory reason offered by EMC for her salary is *pretextual*. A reasonable jury could not return a verdict in favor of Dr. Nafisseh Heiat in light of the evidence presented to the court during the summary judgment proceedings. [Emphasis added.]

Notably, the court granted summary judgment not because of Nafisseh's inability to establish a genuine issue of material fact or to *raise* an *inference* of pretext. Rather, the court, citing the <u>McDonnell Douglas</u> trial burden, faulted Nafisseh for her failure to "establish" that EMC's proffered reason "*is* a pretext."

The test that we now establish for a plaintiff in a discrimination case to survive a motion for summary judgment

12

comports with Rule 56, M.R.Civ.P., in that a plaintiff is required to raise an inference of pretext, as opposed to proving pretext. This burden is more aligned with the general requirement of raising a genuine issue of material fact to survive the motion for summary judgment.

In the instant case, Nafisseh has pointed to inconsistencies in EMC's explanation that could support an inference of discrimination. The District Court found that Nafisseh had established a prima facie case because she had "proved that she is a woman and her male colleague with the same credentials, who performs substantially the same work, receives a higher salary than her." See St. Mary's Honor Ctr., 113 S.Ct. at 2747 (discussing the elements of a prima facie case in the racial discrimination context); Sorba, 821 F.2d at 203 (discussing the elements of a prima facie case in the ADEA context). Additionally, Nafisseh submitted affidavits which, in addition to the facts making up the prima facie case, raise an inference that the defendant's proffered reason is pretextual. Chauhan, 897 F.2d at 128. Under the standard we now announce, Nafisseh would not be required to produce affidavits establishing her prima facie case until the defendant moves for summary judgment and proffers a legitimate nondiscriminatory reason for the salary disparity.

In her affidavit, Nafisseh stated that she "was not advised that the reason Dr. Abbas Heiat was receiving a higher salary than mine was because he occupied an 'anchor position' in the department and that it was the practice of the college to pay a premium salary

13

to fill such 'anchor positions.'" Further, Nafisseh stated that she was told that she was receiving a lower salary because of "budgetary problems." In his affidavit, Abbas stated that when he was hired he was not advised that one of the reasons he was offered a salary of $40,000 was because he was occupying an "anchor position." In addition, he stated that he has not "been assigned any extra duties, chores, assignments, or responsibilities relative to said 'anchor position.'"

Contrary to the dissent's suggestion that the Heiats have done nothing more than establish an "understandable lack of knowledge as to the basis for administrative decisions made by EMC," these affidavits raise genuine issues as to material facts in at least three particulars: (1) neither Nafisseh nor Abbas were advised of the "anchor position" rationale when they were hired or during their tenure of teaching; (2) EMC has propounded two differing reasons for Nafisseh's lesser pay; budgetary concerns on the one hand, and the "anchor position" rationale on the other; and (3) contrary to what one would expect if Abbas were in fact an "anchor"--he was never assigned any additional duties or responsibilities commensurate with such a position on the faculty. These are not mere conclusions but, rather, material facts which give rise to genuine issues, not the least of which is the question of whether the "anchor position" rationale was, as Nafisseh claims, merely an afterthought or pretext. These material facts are sufficient to overcome the motion for summary judgment. Hagen, 863 P.2d at 416 (citing D'Agostino v. Swanson (1990), 240 Mont. 435,

14

**442, 784** P.2d 919, 924).

Nafisseh argues, and we agree, that, at best, there is a disputed issue of material fact as to whether Abbas was hired to fill a so-called "anchor position" and, at worst, an issue of whether the whole concept of an "anchor position" was merely a pretext developed after the fact to escape the consequences of EMC's actions which led to this suit. Nafisseh testified that she was told that budgetary problems were the reason she was offered a lower salary. Resolution of this discrepancy was a question of **material** fact. A jury should have the opportunity to weigh the credibility of the witnesses and the testimony to determine whether Nafisseh has indeed been discriminated against because of her sex. This question of material **fact**, whether there was a nondiscriminatory reason for the difference in salaries, should have precluded the District Court from granting EMC's motion for summary judgment.

Reversed and remanded for proceedings consistent with this opinion.

_____
Justice

We concur.

_____

_____
Justices

James C. Nelson, specially concurring.

I concur with the result of our opinion. I also concur in the approach we have taken, and I believe our decision will clarify the burdens of the respective parties in summary judgment proceedings in discrimination cases. Nevertheless, I would have reached the same result using the McDonnell-Douglas analysis which we adopted in Kenyon v. Stillwater County (1992), 254 Mont. 142, 835 P.2d 742.

I write separately only because I do not agree in all respects with the way that we have interpreted Kenyon or that our decision in that case should be overruled. Rather, I believe that our decision here simply clarifies Kenyon.

In Kenyon we relied on and followed Foster v. Arcata Assoc., Inc. (9th Cir. 1985), 772 F.2d 1453, a summary judgment-discrimination case, which, like cases in many other jurisdictions, followed the analysis in McDonnell-Douglas. I believe that the first step in that analysis and in our approach here is really the same--i.e. the plaintiff must initially make out a prima facie case of discrimination at the pleading stage. While that may appear to be a first burden for the plaintiff under McDonnell-Douslas, that same hurdle exists for the plaintiff in any case. I do not believe that the language used in Kenyon that the plaintiff need "adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity," sets any different or higher standard for the initial pleading in discrimination cases than we have traditionally required for pleading in non-discrimination cases. Kenyon, 835 P.2d at 745.

16

In Treutel v. Jacobs (1989), 240 Mont. 405, 784 P.2d 915, a personal injury case decided on summary judgment, citing Rule 8(a), M.R.Civ.P., we stated:

> While this Court has long recognized that a complaint is to be construed in the light most favorable to the plaintiff, Fraunhofer v. Price (1979), 182 Mont. 7, 594 P.2d 324, we cannot say that Linda's complaint, even when viewed favorably to her position, set forth a claim upon which relief can be granted. As we stated in Rambur v. Diehl Lumber Co. (1963), 142 Mont. 175, 179, 382 P.2d 552, 554:
> ". . . a complaint must state something more than facts which, at most, would breed only a suspicion that plaintiffs have a right to relief. Liberality does not go so far as to excuse omission of that which is material and necessary in order to entitle relief."

Treutel, 784 P.2d at 916. Accordingly, the first element of Kenvon is in line with existing law. If plaintiff does not set out a prima facie case in the complaint, her claim will never survive a Rule 12(b)(6) motion to dismiss, much less a motion for summary judgment.

The burden then shifts to the movant for summary judgment, the employer. Under our decision here, under McDonnell-Douglas, and under Kenvon, the test is the same; the employer must come forward with a legitimate nondiscriminatory reason for the alleged discriminatory treatment.

Assuming the employer meets that burden, it is then incumbent on the plaintiff to come forward with sufficient facts to raise an inference that the employer's reason is actually a pretext. While the majority reads the language used in Kenvon as imposing a trial burden of proof on the plaintiff, I do not. I do not find anything in either Kenvon or in Foster that leads me to believe that our

statement that the employee must "demonstrate with specific facts that the employer's explanation is a pretext," imposes any different or higher burden of proof on the plaintiff in a summary judgment-discrimination case than in any other case.

Again, in the context of a non-discrimination case, we recently reiterated the well-established rule as to plaintiff's burden in opposing a motion for summary judgment:

> Once the movant has presented evidence to support his or her motion, the party opposing summary judgment must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact.

Howard v. Conlin Furniture No. 2, Inc. (Mont. 1995), 901 P.2d 116, 119, 52 St.Rep. 814, 815, a wrongful discharge-summary judgment case. See also Thornton v. Songstad (1994), 263 Mont. 390, 868 P.2d 633, a contract case involving the sale of real property, wherein we stated that the non-moving party's proof must be substantial and consist of specific facts and that reliance on speculative, fanciful or conclusory statements is insufficient. Thornton, 868 P.2d at 638. In my view, Kenyon's third step does not require of plaintiff any more than that she present material and substantial factual evidence of pretext, nor does that step allow her to prevail merely on conclusion and speculation. I do not believe that, under Kenyon, the plaintiff is subjected to a trial burden of proof in opposing summary judgment; she is simply required to raise a factually based inference of pretext, but nothing more.

Again, I believe our opinion and our approach here is correct.

18

It should now be crystal clear who bears which burden and what is the correct standard of proof in summary judgment-discrimination cases. Nevertheless, for the very reasons that we set out in our opinion, I would have also concluded under Kenyon that Nafisseh had met her burden to raise a factually based inference that EMC's explanation was pretextual.

Accordingly, I specially concur.

_____
Justice

Justice Karla M. Gray specially concurring.

I concur in the result we reach in this case, but disagree strenuously with portions of the analysis under which it is reached. In this regard, I join in the analysis contained in Justice Nelson's special concurrence.

I write separately to state my dismay over the unnecessary and unwise step of "overruling" Kenyon which is taken here by the three Justices who have signed the plurality opinion. First, Kenyon can and should be clarified, but not overruled, for the reasons stated by Justice Nelson. Indeed, no party to this case suggested overruling Kenyon, a unanimous--and recent--opinion by this Court.

Moreover, the statement in the plurality opinion that "the district courts" are requiring plaintiffs in discrimination cases to do more than merely raise an issue of material fact is questionably sweeping, at best, given that this is the first such case we have seen. In addition, the fact that the District Court in this case applied the McDonnell-Douglas trial burden, rather than the summary judgment burden established by this Court in Kenyon, is hardly a reason to overrule Kenyon. Indeed, had the District Court applied Kenyon, but done so erroneously, the proper course for this Court would be to correct the District Court, not to overrule Kenyon. To suggest that a district court's error in either missing a case altogether or applying it erroneously is a proper basis for overruling that case is certainly a new approach to stare decisis.

20

My major concern with the plurality opinion, however, is just that: it is merely a plurality opinion with regard to overruling _Kenyon_. A majority of this Court is opposed to overruling _Kenyon_, yet apparently this Court is being forced down an entirely new path by virtue of three of its members stating that they can overrule a case with less than a majority vote.

I recognize that, as a practical matter, it makes little difference in this case whether _Kenvon_ is merely clarified or overruled since either would produce the same result. Here, however, it is the plurality's attitude toward precedent and _stare decisis_--and where that attitude will lead us in the future--which is important. Can three votes really overrule a case? In a four to three decision, will the dissenters "overrule" cases relied on by the majority? Are such approaches sufficiently cognizant of the importance of stability, continuity and clarity in the law?

Applying _Kenvon,_ I would conclude that Nafisseh met her burden in this case. Accordingly, I would reverse the District Court.

_____
Justice

21

Justice W. William Leaphart specially concurring.

In pointing out that there are only three votes to reverse Kenvon, Justice Gray's special concurrence characterizes the present decision as a "plurality" decision. That is not an accurate characterization of our holding in this case. Including the special concurrences of Justice Nelson and Justice Gray,[1] there are five votes for the new test adopted in the present case. Thus, as to the adoption of that test, there is clearly a majority. Those same five Justices, however, disagree as to what effect the new test has on the test previously enunciated in Kenvon. No more than three Justices were able to agree on any one characterization. That is, has Kenvon been overruled, clarified or modified? As is apparent from the opinion, three of the Justices did agree that, since the Court had changed Kenvon both procedurally and substantively, Kenvon was, in effect, overruled. The disagreement as to how the result in this opinion affects Kenvon, does not alter the fact that, in the final analysis, a majority of the Court has adopted a new test which replaces the Kenvon test.

_____
                    Justice

_____

[1] I have resisted the temptation to count my own special concurrence as yet another vote for the opinion.

22

Justice Charles E. Erdmann dissenting.

I respectfully dissent. I am not convinced that the new standard adopted by the majority for summary judgment motions in discrimination cases is necessary, nor do I believe it is necessary to overrule our recent decision in Kenyon v. Stillwater County (1992), 254 Mont. 142, 835 P.2d 742. I would continue to utilize the standard established in McDonnell Douglas v. Green (1973), 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668, as applied in the summary judgment context in Foster v. Arcata Associates, Inc. (9th Cir. 1985), 772 F.2d 1453, which was adopted by this Court in Kenyon. Under either the traditional standard or the new standard adopted by the majority, however, I would affirm the District Court.

As recognized by the majority, this Court has adopted the test articulated in McDonnell Doualas and further developed in Texas Department of Community Affairs v. Burdine (1981), 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207, for analyzing discrimination cases. See Kenyon, 835 P.2d 742; Taliaferro v. State (1988), 235 Mont. 23, 766 P.2d 860; European Health Spa v. Human Rights Comm'n (1984), 212 Mont. 319, 687 P.2d 1029; Martinez v. Yellowstone County Welfare Dept. (1981), 192 Mont. 42, 626 P.2d 242.

In McDonnell Douglas, the U.S. Supreme Court set forth the shifting burdens and order of proof in discrimination cases. The plaintiff must first establish a prima facie case of discrimination. This is generally established with reference to the prima

23

facie case model for disparate treatment cases adopted in McDonnell Douglas. Upon proof of a prima facie case, a presumption arises that the employer unlawfully discriminated against the employee. If a prima facie case is established, the employer must produce evidence that its action was based on a legitimate, nondiscriminatory reason, or, under the Equal Pay Act, based on "factors other than sex." If the employer can articulate a legitimate, nondiscriminatory reason, the presumption of discrimination drops out of the case and the burden shifts back to the plaintiff who must then establish that the reason is pretextual. Kenyon, 835 P.2d at 745-46; Taliaferro, 764 P.2d at 863; European Health Spa, 687 P.2d at 1031; Martinez, 626 P.2d at 246; Burdine, 450 U.S. at 252-53.

The District Court found that Nafisseh established a prima facie case of discrimination by showing that she was a woman and a male colleague (Abbas) with the same credentials, who performed substantially the same work, received a higher salary. The District Court went on to find that EMC had established a legitimate, nondiscriminatory reason for the salary differential between Nafisseh and Abbas. Finally, the District Court found that Nafisseh failed to establish that the legitimate, nondiscriminatory reason offered by EMC was pretextual. Since Nafisseh could not produce evidence to establish that EMC's reasons were pretextual, there was no genuine issue of material fact. The District Court

24

concluded that a reasonable jury could not return a verdict in favor of Nafisseh.

As noted, the majority has determined that the <u>McDonnell Douslas</u> test is not appropriate for analyzing discrimination cases in the summary judgment context and developed a new standard. The majority abandons the first element of the <u>McDonnell Douslas</u> test which required the plaintiff to establish a prima facie case, which, once established, created a presumption of discrimination. The majority states that for summary judgment purposes, the court will assume that the plaintiff has alleged a prima facie case of discrimination. The majority retains the second element of the <u>McDonnell Douglas</u> test by then requiring the employer to come forward with a legitimate, nondiscriminatory reason for the action. If the employer comes forward with a legitimate, nondiscriminatory reason, only then does the plaintiff need to establish a prima facie case of discrimination. If the plaintiff produces evidence which raises an inference that the employer's proffered reason is pretextual, the plaintiff's burden is met and summary judgment must be denied.

This new standard requires employers to rebut discrimination allegations not yet proven, which places the cart before the proverbial horse. The Ninth Circuit has discussed and applied the <u>McDonnell Douglas</u> standard in the summary judgment context in <u>Foster</u>.

> On a motion for summary judgment in discrimination cases, the <u>McDonnell Douglas</u> order of proof and shifting of

> burdens must be viewed in light of the traditional test
> for granting summary judgment. See Steckl, 703 F.2d at
> 393. That test is whether the moving party has
> demonstrated that there is no genuine issue of material
> fact and that it is entitled to judgment as a matter of
> law. Alaska v. United States, 754 F.2d 851, 853
> (9th Cir. 1985). Although courts are generally cautious
> about granting summary judgment when motivation and
> intent are at issue, as in Title VII and ADEA cases, such
> relief may nonetheless be appropriate. Steckl, 703 F.2d
> at 393. One purpose of the allocation of burdens in
> Title VII and ADEA actions is to enable the district
> courts to identify meritless suits and dispense with them
> short of trial. Id., at 393-94; Anderson, 656 F.2d at
> 535. Summary judgment, judiciously applied, is an
> appropriate vehicle for accomplishing this objective.

Foster, 772 F.2d at 1459.

While the majority's new standard appears to simplify the summary judgment procedure in discrimination cases by eliminating the initial McDonnell Douglas element, it necessarily abandons the precedence established by this Court as well as numerous other state and federal courts in this area. The traditional standard has worked well in Montana and other jurisdictions and this Court should be reluctant to abandon the process.

The adoption of the new standard, while simplifying the steps to be followed by the parties, leaves unchanged the analysis of the final McDonnell Douglas element--whether the plaintiff can produce evidence to raise an inference that the employer's proffered reasons are pretextual. Here I differ with the majority as to what suffices as evidence to establish the inference in this case.

The majority finds three geniune issues of material fact: (1) Nafisseh and Abbas were not advised by EMC that it considered Abbas' position an "anchor position"; (2) EMC has given two reasons

26

for Nafisseh's lower pay--budgetary concerns and the "anchor position" rationale; and (3) Abbas was never assigned any additional duties one would expect of an "anchor position." These three assertions are merely speculative or conclusory and are insufficient to raise a genuine issue of material fact. See Farm Credit Bank of Spokane v. Hill (1993), 266 Mont. 258, 265, 879 P.2d 1158, 1162.

In this case, EMC established that when Abbas was hired in 1987 the school had just lost the only faculty member in the information **systems** discipline who possessed a Ph.D. The administration felt it was important to the credibility and reputation of the discipline to immediately find another Ph.D. to "anchor" the discipline. The term "anchor position" merely referred to the need for a Ph.D. and there was absolutely no evidence in the record that the **term** envisioned any additional duties *or* responsibilities. EMC was willing to pay a premium to recruit a high quality applicant with a Ph.D. and did so when they hired Abbas.

In 1988, however, when EMC advertised for an assistant professor in the information systems discipline, a Ph.D. was already on staff so there was no reason to pay a premium. The job advertisement did not require that applicants have a Ph.D. Nafisseh, who had a Ph.D., applied for and was hired for the position at a salary level higher than the salary schedule the union agreement called for, but lower than the salary paid to Abbas

27

the year before. EMC's articulated reason for the salary differential was that there was no need to pay a premium for a second Ph.D. in the same discipline, a reason the District Court found to be legitimate and nondiscriminatory.

In the affidavits filed in opposition to EMC's motion for summary judgment, the Heiats stated that they were not aware of EMC's proffered reasons for the salary differential when they were hired. Nafisseh stated in her deposition that she was told when she was hired that the college was experiencing "budget problems," but that statement does not conflict with EMC's position that they were not willing to pay a premium for a second Ph.D. in the information systems discipline. The Heiats' affidavits do not create any genuine issues of material fact, but merely reflect the Heiats' understandable lack of knowledge as to the basis for administrative decisions made by EMC.

In her deposition, Nafisseh confirmed that she had no knowledge that would create a genuine issue of material fact:

> Q: So you don't think -- you don't know then that the basis for offering you $20,000 was the fact that you were a woman rather than the fact that you were the second Ph.D. hired?

> HEIAT: I know that I was offered a lower salary, and I knew that I was a female rather than a male compared to another colleague who was paid a higher salary. So my conclusion was that probably it was based on my sex.

> .          '

> Q: Well, you said that you can't say that the school was not basing their salary decisions on the fact that you were the second Ph.D.? They might very well have been basing them on that?

28

HEIAT:   I said I don't know.   If they were, I wasn't aware of it. Nobody told me.

Nafisseh's subjective belief of discrimination does not create a genuine issue of material fact.   See Tozzi v. Joliet Junior College (U.S.D.C. N.D. Ill. 1989), 57 FEP 269, 272 (citing Andre v. Bendix Corp.   (7th Cir. 1988), 841 F.2d 172, 176, cert. denied (1988), 488 U.S. 855, 109 S. Ct. 144, 102 L. Ed. 2d 116).   Her statements are conclusory and are not supported by any specific evidence and are insufficient to create a genuine issue of material fact.   See Grimwood v. Univ. of Puget Sound (Wash. 1988), 753 P.2d 517, 519-20.

The majority cites Box v. A & P Tea Co. (7th Cir. 1985), 772 F.2d 1372, and Brown v. Parker-Hannifin Corp. (10th Cir. 1984), 746 F.2d 1407, and yet both these cases support the traditional summary judgment standard.

> It is true that once a properly supported motion for summary judgment is made, the opposing party may not merely rest on the allegations in the complaint and must respond with some factual showing of the existence of a genuine issue of material fact.

Brown, 746 F.2d at 1412

> As the district court correctly noted, '[c]onjecture, speculation, references to matters outside the [affiant's] personal knowledge, conclusory statements and bare assertions of the general truth of a particular matter will not suffice to withstand a properly supported motion for summary judgment.'

Box, 772 F.2d at 1378.

In this case, Nafisseh has certainly not presented any evidence that EMC's proffered reasons are pretextual nor has she

29

presented evidence that would raise an inference that the reasons are pretextual. She instead argues that she and her husband were not informed of EMC's reason for the pay differential when they were hired and, since her husband is being paid more, she "concluded" that she had been discriminated against based upon her gender. Under the McDonnell Douglas/Foster analysis, a plaintiff seeking to establish a pretext must, at a minimum, introduce evidence that raises an inference that the employer's proffered reasons are pretextual. Nafisseh has simply failed to do so.

This Court has held that the primary policy and general purpose underlying Rule 56, M.R.Civ.P., is "to promptly dispose of actions in which there is no genuine issue of fact, thereby eliminating unnecessary trial, delay and expense." Silloway v. Jorgenson (1965), 146 Mont. 307, 310, 406 P.2d 167, 169. "[T]he purpose of summary judgment is to encourage judicial economy by eliminating *unnecessary* trials . . . ." Cole v. Flathead County (1989), 236 Mont. 412, 416, 771 P.2d 97, 99-100.

> [T]he salutary purposes of summary judgment--avoiding protracted, e x p e n s i v e a n d less to discrimination cases than to commercial or other areas of litigation. . . To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.

Ritzie v. City Univ. of New York (S.D.N.Y. 1989), 703 F. Supp. 271, 281.

Virtually all of the cases in this area, including those cited by the majority, require more than speculation and conclusory

30

statements.   Here EMC's proffered reason was that Abbas had been hired at the higher salary for an "anchor position" because of the need for a Ph.D. in the discipline.  No evidence contradicted this. When Nafisseh was hired there was no need to expend additional dollars to recruit a Ph.D. since the discipline already had one. **NO** evidence contradicted this.   Nafisseh and the majority speculated that the "anchor position" might require additional duties.   No evidence supports this speculation.   Nafisseh has simply failed to establish evidence which would support an inference that EMC's reasons were pretextual.

The proper standard was set forth by the Ninth Circuit in <u>Foster</u> and was properly articulated and applied by this Court in <u>Kenyon.</u>   I would continue to rely on the <u>McDonnell Douglas/Burdine</u> standard as defined in the summary judgment context by <u>Foster</u> and adopted by this Court in <u>Kenyon.</u>   However, under either standard Nafisseh has failed to establish that EMC's proffered reasons are pretextual.   I would affirm the District Court.

_____
Justice


Chief Justice J. A. Turnage joins in the foregoing dissenting opinion.

_____
Chief Justice

31'