JUSTICE ERDMANN
dissenting.
I respectfully dissent. I am not convinced that the new standard adopted by the majority for summary judgment motions in discrimination cases is necessary, nor do I believe it is necessary to overrule our recent decision in Kenyon v. Stillwater County (1992), 254 Mont. 142, 835 P.2d 742. I would continue to utilize the standard established in McDonnell Douglas v. Green (1973), 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668, as applied in the summary judgment context in Foster v. Arcata Associates, Inc. (9th Cir. 1985), 772 F.2d 1453, which was adopted by this Court in Kenyon. Under either the traditional standard or the new standard adopted by the majority, however, I would affirm the District Court.
As recognized by the majority, this Court has adopted the test articulated in McDonnell Douglas and further developed in Texas Department of Community Affairs v. Burdine (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, for analyzing discrimination cases. See Kenyon, 835 P.2d 742; Taliaferro v. State (1988), 235 Mont. 23, 764 P.2d 860; European Health Spa v. Human Rights Comm’n (1984), 212 Mont. 319, 687 P.2d 1029; Martinez v. Yellowstone County Welfare Dept. (1981), 192 Mont. 42, 626 P.2d 242.
In McDonnell Douglas, the U.S. Supreme Court set forth the shifting burdens and order of proof in discrimination cases. The plaintiff must first establish a prima facie case of discrimination. This *339 is generally established with reference to the prima facie case model for disparate treatment cases adopted in McDonnell Douglas. Upon proof of a prima facie case, a presumption arises that the employer unlawfully discriminated against the employee. If a prima facie case is established, the employer must produce evidence that its action was based on a legitimate, nondiscriminatory reason, or, under the Equal Pay Act, based on “factors other than sex.” If the employer can articulate a legitimate, nondiscriminatory reason, the presumption of discrimination drops out of the case and the burden shifts back to the plaintiff who must then establish that the reason is pretextual. Kenyon, 835 P.2d at 745-46; Taliaferro, 764 P.2d at 863; European Health Spa, 687 P.2d at 1031; Martinez, 626 P.2d at 246; Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093-94.
The District Court found that Nafisseh established a prima facie case of discrimination by showing that she was' a woman and a male colleague (Abbas) with the same credentials, who performed substantially the same work, received a higher salary. The District Court went on to find that EMC had established a legitimate, nondiscriminatory reason for the salary differential between Nafisseh and Abbas. Finally, the District Court found that Nafisseh failed to establish that the legitimate, nondiscriminatory reason offered by EMC was pretextual. Since Nafisseh could not produce evidence to establish that EMC’s reasons were pretextual, there was no genuine issue of material fact. The District Court concluded that a reasonable jury could not return a verdict in favor of Nafisseh.
As noted, the maj ority has determined that the McDonnell Douglas test is not appropriate for analyzing discrimination cases in the summary judgment context and developed a new standard. The majority abandons the first element of the McDonnell Douglas test which required the plaintiff to establish a prima facie case, which, once established, created a presumption of discrimination. The majority states that for summary judgment purposes, the court will assume that the plaintiff has alleged a prima facie case of discrimination. The majority retains the second element of the McDonnell Douglas test by then requiring the employer to come forward with a legitimate, nondiscriminatory reason for the action. If the employer comes forward with a legitimate, nondiscriminatory reason, only then does the plaintiff need to establish a prima facie case of discrimination. If the plaintiff produces evidence which raises an inference that the employer’s proffered reason is pretextual, the plaintiff’s burden is met and summary judgment must be denied.
*340 This new standard requires employers to rebut discrimination allegations not yet proven, which places the cart before the proverbial horse. The Ninth Circuit has discussed and applied the McDonnell Douglas standard in the summary judgment context in Foster.
On a motion for summary judgment in discrimination cases, the McDonnell Douglas order of proof and shifting of burdens must be viewed in light of the traditional test for granting summary judgment. See Steckl [v. Motorla, Inc.], 703 F.2d [392] at 393, [(9th Cir. 1983)]. That test is whether the moving party has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Alaska v. United States, 754 F.2d 851, 853 (9th Cir. 1985). Although courts are generally cautious about granting summary judgment when motivation and intent are at issue, as in Title VII and ADEA cases, such relief may nonetheless be appropriate. Steckl, 703 F.2d at 393. One purpose of the allocation of burdens in Title VII and ADEA actions is to enable the district courts to identify meritless suits and dispense with them short of trial. Id., at 393-94; [Douglas v.] Anderson, 656 F.2d [528] at 535, [(9th Cir. 1981)]. Summary judgment, judiciously applied, is an appropriate vehicle for accomplishing this objective.
Foster, 772 F.2d at 1459.
While the majority’s new standard appears to simplify the summary judgment procedure in discrimination cases by eliminating the initial McDonnell Douglas element, it necessarily abandons the precedence established by this Court as well as numerous other state and federal courts in this area. The traditional standard has worked well in Montana and other jurisdictions and this Court should be reluctant to abandon the process.
The adoption of the new standard, while simplifying the steps to be followed by the parties, leaves unchanged the analysis of the final McDonnell Douglas element — whether the plaintiff can produce evidence to raise an inference that the employer’s proffered reasons are pretextual. Here I differ with the majority as to what suffices as evidence to establish the inference in this case.
The majority finds three geniune issues of material fact: (1) Nafisseh and Abbas were not advised by EMC that it considered Abbas’ position an “anchor position”; (2) EMC has given two reasons for Nafisseh’s lower pay — budgetary concerns and the “anchor position” rationale; and (3) Abbas was never assigned any additional duties one would expect of an “anchor position.” These three assertions are merely speculative or conclusory and are insufficient to raise a *341 genuine issue of material fact. See Farm Credit Bank of Spokane v. Hill (1993), 266 Mont. 258, 265, 879 P.2d 1158, 1162.
In this case, EMC established that when Abbas was hired in 1987 the school had just lost the only faculty member in the information systems discipline who possessed a Ph.D. The administration felt it was important to the credibility and reputation of the discipline to immediately find another Ph.D. to “anchor” the discipline. The term “anchor position” merely referred to the need for a Ph.D. and there was absolutely no evidence in the record that the term envisioned any additional duties or responsibilities. EMC was willing to pay a premium to recruit a high quality applicant with a Ph.D. and did so when they hired Abbas.
In 1988, however, when EMC advertised for an assistant professor in the information systems discipline, a Ph.D. was already on staff so there was no reason to pay a premium. The job advertisement did not require that applicants have a Ph.D. Nafisseh, who had a Ph.D., applied for and was hired for the position at a salary level higher than the salary schedule the union agreement called for, but lower than the salary paid to Abbas the year before. EMC’s articulated reason for the salary differential was that there was no need to pay a premium for a second Ph.D. in the same discipline, a reason the District Court found to be legitimate and nondiscriminatory.
In the affidavits filed in opposition to EMC’s motion for summary judgment, the Heiats stated that they were not aware of EMC’s proffered reasons for the salary differential when they were hired. Nafisseh stated in her deposition that she was told when she was hired that the college was experiencing “budget problems,” but that statement does not conflict with EMC’s position that they were not willing to pay a premium for a second Ph.D. in the information systems discipline. The Heiats’ affidavits do not create any genuine issues of material fact, but merely reflect the Heiats’ understandable lack of knowledge as to the basis for administrative decisions made by EMC.
In her deposition, Nafisseh confirmed that she had no knowledge that would create a genuine issue of material fact:
Q: So you don’t think — you don’t know then that the basis for offering you $28,000 was the fact that you were a woman rather than the fact that you were the second Ph.D. hired?
HEIAT: I know that I was offered a lower salary, and I knew that I was a female rather than a male compared to another colleague *342 who was paid a higher salary. So my conclusion was that probably it was based on my sex.
Q: Well, you said that you can’t say that the school was not basing their salary decisions on the fact that you were the second Ph.D.? They might very well have been basing them on that?
HEIAT: I said I don’t know. If they were, I wasn’t aware of it. Nobody told me.
Nafisseh’s subjective belief of discrimination does not create a genuine issue of material fact. See Tozzi v. Joliet Junior College (U.S.D.C. N.D. Ill. 1989), 57 FEP 269, 272, 1989 WL 96447 (citing Andre v. Bendix Corp. (7th Cir. 1988), 841 F.2d 172, 176, cert. denied (1988), 488 U.S. 855, 109 S.Ct. 144, 102 L.Ed.2d 116). Her statements are conclusory and are not supported by any specific evidence and are insufficient to create a genuine issue of material fact. See Grimwood v. Univ. of Puget Sound (Wash. 1988), 753 P.2d 517, 519-20.
The majority cites Box v. A & P Tea Co. (7th Cir. 1985), 772 F.2d 1372, and Brown v. Parker-Hannifin Corp. (10th Cir. 1984), 746 F.2d 1407, and yet both these cases support the traditional summary judgment standard.
It is true that once a properly supported motion for summary judgment is made, the opposing party may not merely rest on the allegations in the complaint and must respond with some factual showing of the existence of a genuine issue of material fact.
Brown, 746 F.2d at 1412.
As the district court correctly noted, ‘[c]onjecture, speculation, references to matters outside the [affiant’s] personal knowledge, conclusory statements and bare assertions of the general truth of a particular matter will not suffice to withstand a properly supported motion for summary judgment.’
Box, 772 F.2d at 1378.
In this case, Nafisseh has certainly not presented any evidence that EMC’s proffered reasons are pretextual nor has she presented evidence that would raise an inference that the reasons are pretextual. She instead argues that she and her husband were not informed of EMC’s reason for the pay differential when they were hired and, since her husband is being paid more, she “concluded” that she had been discriminated against based upon her gender. Under the McDonnell Douglas I Foster analysis, a plaintiff seeking to establish a pretext must, at a minimum, introduce evidence that raises an *343 inference that the employer’s proffered reasons are pretextual. Nafisseh has simply failed to do so.
This Court has held that the primary policy and general purpose underlying Rule 56, M.R.Civ.R, is “to promptly dispose of actions in which there is no genuine issue of fact, thereby eliminating unnecessary trial, delay and expense.” Silloway v. Jorgenson (1965), 146 Mont. 307, 310, 406 P.2d 167, 169. “[T]he purpose of summary judgment is to encourage judicial economy by eliminating unnecessary trials ....” Cole v. Flathead County (1989), 236 Mont. 412, 416, 771 P.2d 97, 99-100.
[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation. ... To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.
Ritzie v. City Univ. of New York (S.D.N.Y. 1989), 703 F. Supp. 271, 281.
Virtually all of the cases in this area, including those cited by the majority, require more than speculation and conclusory statements. Here EMC’s proffered reason was that Abbas had been hired at the higher salary for an “anchor position” because of the need for a Ph.D. in the discipline. No evidence contradicted this. When Nafisseh was hired there was no need to expend additional dollars to recruit a Ph.D. since the discipline already had one. No evidence contradicted this. Nafisseh and the majority speculated that the “anchor position” might require additional duties. No evidence supports this speculation. Nafisseh has simply failed to establish evidence which would support an inference that EMC’s reasons were pretextual.
The proper standard was set forth by the Ninth Circuit in Foster and was properly articulated and applied by this Court in Kenyon. I would continue to rely on the McDonnell Douglas /Burdine standard as defined in the summary judgment context by Foster and adopted by this Court in Kenyon. However, under either standard Nafisseh has failed to establish that EMC’s proffered reasons are pretextual. I would affirm the District Court.
CHIEF JUSTICE TURNAGE joins in the foregoing dissenting opinion.