No. 84-94

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

EUROPEAN HEALTH SPA,

        Petitioner and Appellant,

   -vs-

THE HUMAN RIGHTS COMMISSION OF
THE STATE OF MONTANA, and VIOLET
HADDOW,

        Respondents and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John K. Addy, Billings, Montana

    For Respondents:

        Keefer, Roybal, Hanson, Stacey & Jarussi; Calvin J.
Stacey, Billings, Montana
Kathleen F. Holden, Human Rights Commission, Helena,
Montana

---

Submitted on Briefs: July 27, 1984

Decided: September 13, 1984

Filed:

_Ethel M. Harrison_

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The Thirteenth Judicial District Court of Montana issued a judgment on December 19, 1983, affirming the January 21, 1983, final order of the Human Rights Commission and awarding Violet Haddow (Haddow) $3,500 in attorney's fees. The Commission ruled in its order that the European Health Spa (Spa) had discriminated against Haddow on the basis of marital status. Spa appeals the judgment of the District Court. We affirm.

Violet Haddow was hired by Spa as an instructor in May of 1977. She was reclassified to a counselor/consultant in September of 1977. A counselor/consultant solicits memberships in the Spa. As a counselor, Haddow never failed to produce commissions equalling or surpassing her monthly draw of $500. In fact, from September 1977 until July 1978, Haddow averaged approximately $890.00 a month in commissions. She was consistently above the 50th percentile in sales totals for the Rocky Mountain area.

Haddow requested and subsequently took vacation leave from August 3 to August 11, 1978. On August 7, 1978, Haddow's husband, John Haddow, was terminated as manager of the Spa. The reason given for his termination was mismanagement of funds.

European Health Spa places a ceiling on commissions spa managers can receive for spa memberships they, themselves, sell. John Haddow transferred some of his own membership sales to Spa counselors and subsequently obtained from them the commissions they received for those sales. He also was accused of failing to record spa membership sales and pocketing the proceeds from those sales. (The Commission's revised findings of fact nos. 15, 16 and 17.)

Violet Haddow visited the Spa on August 9, 1978. The new manager's wife overheard Haddow stating that her husband had been fired because the new manager had personal connections with company management and that a petition to oust the new manager and reinstate her husband would be circulated. Haddow was subsequently called from the exercise floor and fired by the new manager.

On August 28, 1978, Haddow filed a complaint alleging that she was discharged because she is the wife of the recently-discharged manager; and, that her discharge violated the marital status discrimination prohibitions of the Human Rights Act, section 49-2-303(1)(a), MCA.

Spa denied the allegations and claimed that Haddow was fired for several nondiscriminatory reasons. Specifically, Violet Haddow: (1) was aware of her husband's kickback scheme involving the commissions (p. 103 of the transcript of the June 26, 1980, hearing before the examiner); (2) failed in her weekend responsibilities as assistant-manager; (3) was behind in sales production; (4) sold three, one-month memberships (against company policy) and pocketed the proceeds; and (5) was grossly insubordinate in her behavior on the day she was discharged.

A hearing was held before a hearings examiner on June 26, 1980. Haddow presented substantial evidence to refute Spa's allegations, including records of commissions she earned, documents contradicting Spa's assertion that she was assistant manager, the Spa's employee handbook setting forth the procedures to be followed prior to terminating an employee and a "Personnel Action Notice" documenting Violet Haddow's termination prepared on August 4, 1978 and indicating an effective date of August 7, 1978.

3

Coincidentally, the same dates appear on John Haddow's "Personnel Action Notice."

Findings of fact, conclusions of law and a proposed order were issued October 6, 1980, by the hearings examiner. He found that Spa had decided to terminate Haddow on August 4, 1978, the same date they decided to discharge her husband. He further found a lack of substantial credible evidence to support all of Spa's alleged reasons for discharging Haddow except her insubordinate conduct on August 9, 1978. Regarding that conduct, he stated: "Haddow's behavior in the locker room may well be valid grounds for discharge, however, I cannot say as a matter of fact that it overcame and replaced the prior decision on August 4 to discharge Haddow." (Finding of fact no. 27). Then, citing McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, the hearings examiner held that Spa's alleged reasons for terminating Haddow were merely "a pretext for marital status discrimination." (Conclusion of law no. 2.) Finally, because of her improprietous conduct, he denied Haddow back pay. (Conclusion of law no. 3.)

Exceptions were filed, briefed and orally argued before the Human Rights Commission. The Commission issued a proposed opinion September 30, 1981, adopting the examiner's conclusion that the Spa had discriminated against Haddow, but awarding her back pay in the amount of $7,489.81, with interest at 10%.

Spa filed a petition for judicial review in the Thirteenth Judicial District on November 16, 1981. The trial judge determined that the Commission had failed to review the complete record, pursuant to section 2-4-621(3), MCA, before increasing the award to Haddow recommended by the examiner.

4

Thus, the case was remanded for further review by the Commission.

Upon review of the entire record, the Commission issued a final order with revised findings and conclusions, dated January 21, 1982. The final order upheld the Commission's initial holding and award of back pay with interest. It also upheld the findings and conclusions of the examiner that Spa's reasons for Haddow's discharge were a pretext for marital status discrimination, citing McDonnell.

Spa again filed a petition for judicial review. The District Court affirmed the Commission's final order and awarded Haddow $3,500 in attorney's fees. From that judgment, Spa appeals the following issues:

1. Whether the District Court erred in using the test in McDonnell rather than the "dual motivation theory" of Mt. Healthy City School District Board of Education v. Doyle (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, when reviewing the decision of the Montana Human Rights Commission; and

2. Whether the District Court erred in its determination that Violet Haddow is entitled to back pay with interest from the date of the hearing examiner's determination?

The United States Supreme Court, in McDonnell set forth a test for determining whether employment discrimination exists under Title VII of the Civil Rights Act of 1964, when an employee is discharged for both discriminatory and nondiscriminatory reasons. The test was explained in Texas Deptartment of Community Affairs v. Burdine (1981), 450 U.S. 248, 252-253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215:

> "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff

5

succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (Citations omitted)

Mt. Healthy involves a constitutionally protected, first amendment right. Mr. Green was a nontenured school teacher in the Mt. Healthy City School District. He was denied tenure and discharged for "'a notable lack of tact in handling professional matters which leaves much doubt as to your sincerity in establishing good school relationships.'" Mt. Healthy, 429 U.S. at 282, 97 S.Ct. at 574, 50 L.Ed.2d at 481. One stated indiscretion was an activity constitutionally protected by the First Amendment. The other stated reason was an incident in the school's cafeteria which did not involve a constitutionally protected act. The Supreme Court remanded the case with the following instructions for determining whether Mr. Green's discharge was a violation of his first amendment rights.

"Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' - or, to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484. (footnote omitted)

In Martinez v. Yellowstone County Welfare Department (Mont. 1981), 626 P.2d 242, 38 St.Rep. 474, we adopted the McDonnell test for employment discrimination cases filed under section 49-2-303, MCA, which involve disparate treatment of a protected class because "[t]he provisions of

6

Title 49, Montana Human Rights Act, are closely modeled after Title VII of the Federal Civil Rights Act of 1964. . . ." Martinez, 626 P.2d at 245, 38 St.Rep. at 477. Marital status is defined as a protected class in Thompson v. Board of Trustees, School District No. 12, Harlem, Blaine County, (Mont. 1981), 627 P.2d 1229, 1231, 38 St.Rep. 706, 709. Since the instant case was filed under section 49-2-303, MCA, and involves a member of a protected class, we see no reason to deviate from our position in Martinez. The McDonnell test is the appropriate test in this case.

The second issue presented to this Court is whether or not the Commission erred in awarding Haddow back pay when the hearings examiner refused to do so. We find no error.

The hearings examiner held as a matter of law that Haddow was not entitled to any pecuniary award, stating:

> ". . . Haddow's improprietous actions were no doubt soon discovered after her discharge. The respondent would have had and did have adequate justifiable grounds to discharge her once it discovered the improper activities of the charging party." (Hearings examiner's conclusion of law no. 3)

"The Commission may reject or modify an examiner's conclusions of law." City of Billings v. State of Montana Human Rights Commission (Mont. 1984), 681 P.2d 33, 37, 41 St.Rep. 688, 693. Section 2-4-621(3), MCA. After reviewing the entire record, the Commission substantially changed the hearings examiner's conclusion:

> "Conclusive substantial credible evidence that Violet Haddow has committed improprietous action is not part of the record. The Respondent may have had adequate justifiable grounds to discharge her once it determined in a fair manner that she was involved in improper business activities. The Respondent's handbook sets forth a procedure for such a discharge and Section 49-2-303, MCA, clearly permits such a discharge. Neither was heeded in these circumstances." (Commission's final order, conclusion of law no. 3)

The Commission then awarded Haddow $7,489.81, with interest thereon at 10% per annum from the date of the hearing, June 26, 1980, until the date paid. The sum represents the amount Haddow would have earned through June 30, 1979, the date she left the Billings, Montana area. Section 49-2-506(1)(b), MCA, gives the Commission discretionary authority "to rectify any harm, pecuniary or otherwise," to the person against whom discrimination is found.

Neither the District Court nor this Court may alter the conclusion of the Commission absent a finding that such conclusion is arbitrary and capricious. Section 2-4-704(2), MCA. City of Billings v. Billings Firefighters Local No. 521 (Mont. 1982), 651 P.2d 627, 39 St.Rep. 1844. The award of back pay is supported by the evidence discussed above and is well within the powers of the Commission. It was neither arbitrary nor capricious.

The judgment of the District Court approving the order of the Human Rights Commission is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8